FRANK GAEDIS, by Next Friend, AUGUST GAEDIS, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, February 5, 1912.

1. NEGLIGENCE: Street Railways: Personal Injuries. Plaintiff, an infant four years old, sued for damages for personal injuries received when run down by an electric street car. He was playing on the track and was in plain view of the motorman when a block or more away. *Held*, that plaintiff's youth precludes any contributory negligence and his presence on the track, unattended, was a danger signal that should have put the motorman on his guard.

161 App.—15

2. ——: ——: **Pleading.** Where the pleaded acts of negligence are so inconsistent that the proof of one would disprove the existence of the others, the petition on its face is *felo de se* and will not support a judgment.

3. ——: ——: ——. There is no repugnancy in a petition between the charges that the motorman was running the car at a dangerous rate of speed, did not sound the bell, and that he saw or should have seen the peril of the boy in time to have stopped the car had he been in the exercise of reasonable care.

Appeal from Jackson Circuit Court.—*Hon. James E. Goodrich*, Judge.

AFFIRMED.

*John H. Lucas* and *H. H. McCluer* for appellant.

(1) The petition did not state facts sufficient to constitute a cause of action. Gabriel v. Railway, 130 Mo. App. 551; Raming v. Railway, 157 Mo. 508; Sherman v. Rockwood, 26 Mo. App. 403; England v. Denham, 93 Mo. App. 13-19; Adams v. Trigg, 37 Mo. 141; Darrett v. Donnelly, 38 Mo. 492; Haley v. Railroad, 197 Mo. 13; White v. Railroad, 202 Mo. 539; Jordon v. Transit Co., 202 Mo. 426. (2) The court erred in giving appellant's instruction in the nature of a demurrer to the evidence offered at the close of the plaintiff's evidence and again at the close of all the evidence. Grout v. Railway, 125 Mo. App. 552; Haley v. Railroad 197 Mo. 25; Rine v. Railway, 88 Mo. 400; Ross v. Railway, 112 S. W. 9. (3) The court erred in giving instruction marked P-1½. Railway v. Trego, 101 S. W. 256; Railway v. McCorkle, 140 Ind. 613, 40 N. E. 62; Railway v. Jones, 33 Ind. App. 333, 71 N. E. 275.

*Henry J. Latshaw* for respondent.

(1) The petition states facts sufficient to constitute a cause of action and the allegations of negligence are not inconsistent. Heinzle v. Railway, 213

Mo. 102; Nipper v. Railway, 145 Mo. App. 224; Mc-
Quade v. Railway, 200 Mo. 150; Thompson v. Livery
Company, 214 Mo. 487; Blyston-Spencer v. Railroad,
152 Mo. App. 118; Sharp v. Railway, 213 Mo. 525;
Childres v. Railroad, 141 Mo. App. 685. (2) The
case was tried on the humanitarian doctrine and was
submitted to the jury on that theory alone, and by be-
ing submitted to the jury on that theory alone by
plaintiff's instructions all other charges of negligence
and theories were eliminated. White v. Railroad, 202
Mo. 561. (3) The court did not err in refusing to give
appellant's instruction in the nature of a demurrer of-
fered at the close of plaintiff's evidence and again at
the close of all the evidence. Behen v. Transit Co.,
186 Mo. 441; McQuade v. Railroad, 200 Mo. 156; Nip-
per v. Railroad, 145 Mo. 227; Waddell v. Railroad, 213
Mo. 16. (4) Plaintiff's instruction marked P-1½
was a correct declaration of the law. Nipper v. Rail-
road, 145 Mo. 228; Waddell v. Railroad, 213 Mo. App.
16; Zander v. Railroad, 206 Mo. 464; Spencer v. Transit
Company, 221 Mo. 310. (5) The allegation in plain-
tiff's petition that defendant's motorman failed to
have the car under control when it ran over plain-
tiff and as it approached plaintiff, did not mean when
properly construed, namely when construed "liberally
with a view of substantial justice between the parties,"
does not mean that the car was running away or was
beyond the control of the motorman. R. S. 1909, sec-
tion 1831; Cornovski v. T. Co., 207 Mo. 263; Cyrton v.
T. Co., 205 Mo. 692; Meeker v. Railway, 178 Mo. 173.

JOHNSON, J.—This suit is prosecuted by August
Gaedis as next friend of his infant son, Frank Gaedis,
to recover damages for personal injuries sustained
by Frank in being struck by an electric street car
operated by defendant on one of its lines of street
railway in Kansas City, Kansas. A trial in the cir-
cuit court resulted in a verdict and judgment for

plaintiff in the sum of $2,000, and after unsuccess-
fully moving for a new trial and in arrest of judgment,
defendant brought the case here by appeal.

The injury occurred in the afternoon of Septem-
ber 18, 1908, on North Fifth street in Kansas City,
Kansas, near the intersection of Elizabeth avenue.
This street runs north and south and going north
from Elizabeth avenue is on 'a slight upward grade
for several blocks. Defendant operates a double track
electric railway on Fifth street and a southbound
electric street car of the single truck type inflicted the
injury in question. August Gaedis conducted a groc-
ery store on the west side of Fifth street and with
his family resided over the store. He had two chil-
dren, Annie who was between six and seven years
old, and Frank, four years and ten months of age. The
evidence of plaintiff tends to show that a short time
before the injury these children went into the street
and engaged in play on the west track on which south-
bound cars were run. They played with sand dropped
by passing cars and were on or near the east rail.
While thus engaged a car came from the north at a
speed of eight or ten miles per hour and ran by with-
out slackening speed or sounding the bell. Both
children failed to notice the car until it came very
near. The little girl succeeded in jumping out of the
way and escaped, but the boy was less fortunate and
was struck by the end of the fender as he was trying
to escape and was thrown down. One of his hands
was run over and so crushed that it became neces-
sary to amputate all the fingers except one. The car
ran a block before it was stopped.

The evidence of defendant tends to show that
the children were not playing on the track but while
the car was advancing at a speed not to exceed five
miles per hour they first attempted to cross the track
in front of the car and being warned away, they stood
on the east side of the track apparently in the clear

while the car ran by. No one on the car knew that the child had been struck until the car stopped a block away when, looking back, they discovered that something had happened. An expert witness introduced by plaintiff testified that the car could have been stopped in thirty or forty feet if it had been running eight miles per hour and in fifty or fifty-five feet if its speed had been ten miles. During the approach of the car the children were in the view of the motorman a distance of three or four blocks.

The evidence of plaintiff presents a clear case of negligence on the part of the motorman. The plaintiff was so young he could not have been guilty of contributory negligence and the presence of him and his sister on the track or in proximity to it, unattended by an older person, in itself, was a danger signal that should have put the motorman on his guard. Seeing him there absorbed in play he should have reduced speed and brought the car under complete control so that if necessary it could be stopped before reaching the place where they were playing.

Defendant does not content that the facts disclosed by the plaintiff's evidence do not show that negligence of the motorman was the proximate cause of the injury, but does contend that its demurrer to the evidence should have been sustained because of vital defects in the petition. The specifications of negligence in the petition were as follows:

First. The servants and agents then and there in charge of said car carelessly and negligently failed and neglected to have said car under control at the time it struck plaintiff, and as it approached plaintiff at said time and place.

Second. The servants and agents then and there in charge of said car carelessly and negligently ran said car at a dangerous rate of speed under all the circumstances, at the time and place said car struck

plaintiff and as it approached plaintiff, as above set forth.

Third. The servants and agents of defendant then and there in charge of said car carelessly and negligently failed and neglected to ring the gong of said car, or to otherwise warn plaintiff of the approach of said car, at said time and place, although said servants and agents of defendant knew, or by the exercise of ordinary care and caution could have known that plaintiff was in a perilous, or approaching a position of peril, or attempting to get out of a position of peril, within reasonable time to thereafter have rung said gong or bell of said car, or to have otherwise warned plaintiff of the approach of said car, and to have thereby avoided striking and injuring plaintiff.

Fourth. Said servants and agents of defendant then and there in charge of said car saw plaintiff, or by the exercise of ordinary care and caution could have seen plaintiff in his perilous position upon or near said track, or approaching his perilous position upon or near said track, or attempting to get out of his perilous position upon or near said track, within reasonable time to thereafter have stopped said car, or slacked the speed thereof, without injury to the people upon said car, and thereby to have prevented striking and injuring plaintiff, as above set forth; but said servants and agents of defendant carelessly and negligently failed and neglected to do so.''

The negligence pleaded in the fourth paragraph was the only act of negligence submitted to the jury in the instructions given at the request of plaintiff. The principal one of these instructions was as follows: ''The court instructs the jury that if you find and believe from the evidence in this case that plaintiff, Frank Gaedis, is a minor of about seven (7) years of age and that August Gaedis is legally acting as next friend of said Frank Gaedis for the prosecution

of this suit, and if you further find and believe from the evidence that on September 18, 1908, North 5th street was a public street and thoroughfare in Kansas City, Kansas, and that upon said Sept. 18 1908, at about 2 o'clock p. m. thereof Frank Gaedis was playing with his sister upon the west street railway track on said North 5th street, near and a short distance north of Elizabeth street, and that while so playing one of defendant's southbound electric cars ran against plaintiff and over his left hand, thereby so injuring and mashing said left hand that three fingers thereof had to be and were on account thereof and as a direct result thereof amputated. and if you further find and believe from the evidence that the motorman in charge of said car saw plaintiff or by the exercise of ordinary care and caution, he could have seen plaintiff upon said track, and apparently unconscious of the approach of said car and in a position upon said track of imminent peril of being struck by said car within reasonable time to have thereafter stopped said car without injury to the people upon said car before striking plaintiff and injuring him and failed to do so, then your verdict must be for plaintiff and against defendant."

Necessarily the verdict was based on the sole ground that the motorman failed to exercise reasonable care to discover the perilous situation of plaintiff and to avoid injuring him by stopping the car, since the issues of negligence in running the car at a dangerous speed and in not ringing the bell were not submitted to the jury.

Counsel for defendant argue that the different acts of negligence alleged are so repugnant that the petition is self-destructive and must be regarded as pleading no cause of action. The rule is well settled that where the pleaded acts of negligence are so inconsistent that the proof of one would disprove the existence of the others the petition on its face is *felo*

*de se* and will not support a judgment. [Raming v. Railway, 157 Mo. 477; Gabriel v. Railway, 130 Mo. App. 651.] With this rule in mind we proceed to an analysis of the petition to ascertain if it contain self-destructive averments.

At the outset it would be well to speak of the rules of construction that should guide us in the interpretation of the language of the petition. Section 1831, Rev. State. 1909, provides that "in the construction of a pleading for the purpose of determining its effect, its allegations shall be liberally construed, with a view to substantial justice between the parties." Speaking of this statute the Supreme Court say in Sharp v. Railroad, 213 Mo. l. c. 525:

"That section of the statute does not change the fundamentals of good pleading where justice demands their strict enforcement. It does not dispense with the necessity of stating directly, or inferentially, the facts on which the pleader depends to secure the objects of his pleading. It does not throw on an adversary the hazard of correctly interperting the meanings of a pleading, containing doubtful allegations, on one or the other of which such adversary might fairly act. But it does mean that allegations should be liberally construed with a view to substantial justice. It does mean that super-refinement in gloss, a penchant or bias to superfine analysis, the mere arriving at possible and strained constructions are out of place in getting at the meaning of an allegation in a petition. That language employed in pleadings should be construed with reference to time and place of utterance; should be taken in its plain, ordinary hearth-stone meaning, and such interpretation given as fairly appears within the intendment of the pleader. That is, the intendment most favorable to him shall be alowed—at least, absent a demurrer and present a verdict in his favor, as here. [See authorities collated

by the learned annotators of Mo. Ann. Stat. 1906, p. 652.'']

The courts of this state do not favor the practice of defendants, still much indulged, of answering to the merits without challenging the sufficiency of the petition, of accepting the hazard of a trial on the theory that the petition is sufficient and then when the battle is lost of harking back to the once abandoned ground that the petition does not plead a cause of action. In the present case the petition was not attacked by demurrer or motion. Defendant answered tendering the issue to each and all of the asserted acts of negligence. In such state of case it is our duty to give the petition the most liberal construction and, if it may be done without violence to reason, to reconcile and harmonize the several allegations of negligence. The application of these canons of construction demonstrate the fallacy of defendant's argument against the petition. There is no repugnancy between the charges that the motorman was running the car at a dangerous rate of speed, did not sound the bell, and that he saw or should have seen the peril of the boy in time to have stopped the car had he been in the exercise of reasonable care. All of these facts could be co-existent and, therefore, proof of one would not even tend to disprove the others. It was possible for the car to have been run down the slope at thirty miles per hour—a highly dangerous speed—and for the motorman, who had a clear view of the children for a thousand feet or more to have discovered their peril in time to have avoided injuring the plaintiff by stopping the car. The case of Grout v. Railway, 125 Mo. App. 552, does not aid the position of counsel for defendant. We held in that case that the humanitarian duty of the motorman of a street car relates only to the pecular circumstances of the given situation and, therefore, that the allegation in the petition that the motorman, had the car been running

at a proper speed, would have had a reasonable opportunity to discover the peril and avoid the injury, was not a good plea of negligence under the last chance rule. But in the petition before us the fourth specification of negligence did not assume to deal with a theoretical but with an actual situation and based a right of recovery on the ground that under the existent facts and circumstances the motorman would have discovered the danger to plaintiff and would have prevented the injury by stopping, had he exercised ordinary care. In Haley v. Railroad, 197 Mo. 25, the Supreme Court say:

"The petition charged that the defendant was negligent in the matter of speed and it also charged that the defendant negligently failed to stop the train in time to avoid the collision after the danger was apparent. These two charges are not necessarily inconsistent, because they might both be true, that is, the train might have been moving at a rate of speed that under the circumstances was negligent and yet it might be that the engineer could have stopped it in time to have avoided the accident by the use of ordinary care. But the defendant would not be liable, under what we call the humanitarian doctrine, if the speed of the train was such as to render it impossible for the engineer by the exercise of ordinary care to have stopped it in time, although the speed may have been negligent. Therefore, whilst it is negligence to run a train into a place where danger of collision is to be expected, at such a rate of speed that it could not be quickly stopped on appearance of danger, still it cannot be said that the defendant is liable for failing to stop the train after discovering the peril if in fact the speed was such that the engineer could not stop it."

The last part of this quotation recognizes the rule we declared and applied in the Grout case and the first part clearly supports the view we are discussing,

that there is no inconsistency between the allegations that the injury was caused by moving the car at excessive speed and that the defendant failed to stop the car in time to avoid the collision after the danger was apparent. To the same effect are the opinions in the folowing cases: Heinzle v. Railway, 213 Mo. 102, l. c. 118; Nipper v. Railway, 145 Mo. App. 224; McQuade v. Railway, 200 Mo. l. c. 155; Thompson v. Livery Co., 214 Mo. 487; Blyston-Spencer v. Railroad, 152 Mo. App. 118; Childress v. Railroad, 141 Mo. App. l. c. 685.

Stress is laid by defendant on the effect to be given the averment in the first specification that defendant negligently "failed to have said car under control." The context demonstrates that the pleader did not intend to charge that the car could not have been controlled by the motorman—was running wild—but that it was being run at a dangerous rate of speed under the circumstances of the situation. The petition is sufficient to support the judgment and the court did not err in overruling defendant's request for a peremptory instruction. In what has been said we have answered the principal objections to the instructions given at the request of plaintiff. The other objections are not well taken.

The judgment is affirmed. All concur.